■ CHARLES DINERSTEIN, Appellant, v. BENJAMIN DINERSTEIN, Respondent.— Judgment entered March 11, 1969, unanimously reversed on the law and the facts, and a new trial ordered, with $50 costs and disbursements to appellant. Charles Dinerstein, appellant, and Benjamin Dinerstein, respondent, are brothers. They operated a beauty supply business from 1948 until September 15, 1966 when Benjamin unilaterally excluded Charles from the partnership business. Since the latter date, Benjamin has been operating the business for his own benefit in disregard of the written partnership agreement. Appellant's complaint seeking dissolution of the partnership and an accounting was dismissed by Trial Term at the end of plaintiff's case. The record discloses that Benjamin was the managing partner of the business and as such signed checks, had complete control of the books, solicited the orders and in general operated the business. Charles picked up the merchandise, made up the orders and delivered them to customers. On September 15, 1966, Charles received a letter from Benjamin stating that he was no longer employed. On the following day, when Charles went to the partnership premises, the locks had been changed and a guard blocked his entrance. This action followed. The existence of the partnership is not disputed. Actually, the answer admits the execution of the written partnership agreement in 1951 and sets up as affirmative defenses that the partnership agreement was signed under duress and, alternatively, that plaintiff waived his rights thereunder. Plaintiff's testimony indicated that some of the sales made by the partnership business were in cash. Questioning by the court established that these cash sales and the resulting profit were not reflected on any of the tax returns. With the remark "Why should this Court give aid to crooks?" Trial Term dismissed plaintiff's complaint at the end of his case. The appellant persuasively argues that the defense of "unclean hands" was neither pleaded, argued nor proved and that under the facts of this case is not relevant. Incidental or collateral illegality such as may be present in the instant case will

not preclude an accounting. (See 43 N. Y. Jur., Partnership, § 235.) If the law was violated, Benjamin violated it as much and as knowingly as Charles, if not more so. He should not, therefore, be permitted to profit from the wrong. "Equity is not an avenger of wrongs committed at large by those who resort to it for relief" (2 Pomeroy on Equity Jurisprudence [5th ed.], § 399, pp. 95–96). The doctrine of unclean hands is only available when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct. (*Weiss* v. *Mayflower Donut Corp.*, 1 N Y 2d 310, 316; *Green* v. *Le Beau*, 281 App. Div. 836; *Seagirt Realty Corp.* v. *Chazanof*, 13 N Y 2d 282.) If the plaintiff "is guilty of inequitable conduct toward the defendant in the transaction, his hands are *as clean* as the court can require" (*Smiling Irishman* v. *McDonald*, 183 Misc. 985, 988; *Mindlin* v. *Grissman*, 137 Misc. 838). Whether Charles or Benjamin evaded the payment of income taxes was and is not the issue in this case. The revenue laws, if violated by taxpayers, provide ample punishment and in any event such evasion would be collateral to the contract between the parties (2 Pomeroy on Equity Jurisprudence [5th ed.], p. 114). Prima facie, plaintiff established by competent evidence, a valid and enforceable partnership agreement. It was error to dismiss his complaint, and for that reason we reverse and order a new trial. Concur — Stevens, P. J., Capozzoli, Tilzer, Markewich and Nunez, JJ.